UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
**TAMPA DIVISION**

TERRY ALCINDOR,

Plaintiff,

v.                                                    Case No. 8:20-cv-01620-36AEP

LOUIS DEJOY, POSTMASTER
GENERAL, UNITED STATES POSTAL
SERVICE

Defendant.

_____/

## <u>PLAINTIFF'S AMENDED RESPONSE AND OBJECTION TO DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT</u>

**COMES NOW**, the Plaintiff, Terry Alcindor, by and through undersigned counsel, hereby files Plaintiff's Amended Response to the Defendant's Second Motion for Summary Judgment. The Plaintiff respectfully request that this Honorable Court deny the Defendant's motion in every respect. As a basis for said request the Plaintiff offers the following:

### I.   INTRODUCTION

The Plaintiff (hereinafter "PL") instituted the instant action after being subjected to unlawful discrimination based upon his race, his gender, his

nationality, and his disability. PL is also making claims based on violations of the Family Medical Leave Act (FMLA) and Rehabilitation Act of 1973.

PL is an African-American male with Haitian ancestry. At all times relevant, the supervisors and other employees at the USPS were aware of his ancestry. [PL Exh. A, PL depo, pg. 161, lines 1 - 9]. He was an employee with the Defendant (hereinafter "DEF"), for approximately fourteen to fifteen (14 - 15) years, where he worked as a Mail Handler.  [PL Exh. A, PL depo, pg. 159, lines 15 - 18]. The PL was trained by DEF and was qualified for his job. [PL Exh. A, PL depo, pg. 159, lines 19 - 23].

At all times relevant, PL was supervised by Charles Felix, Cassandra Tramiel, Ramon Gray, Mike Spanos, Kim Crompton, Jeremy Wray, and a Plant Manager. All were aware of PL EEO activity and all engaged in discriminatory conduct. [PL Exh. A, PL depo., pg. 170, lines 6 - 9].

## II.   STANDARD OF REVIEW

Summary judgment standards require that all the evidence be viewed in the light most favorable to the non-movant. Moreover, the Supreme Court has counseled that, in reviewing a summary judgment motion, the court must disregard all evidence favorable to the moving

party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).

Accordingly, at the summary judgment stage, "the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The proper inquiry has a limited focus, and the question to be answered is "whether the evidence presents a sufficient disagreement" or whether it "is so one-sided that one party must prevail as a matter of law." *Id.* at 250. In this process, all justifiable inferences must be construed in favor of the non-movant. *Id.* at 261. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on a motion for summary judgment. *Id.* at 255.

### A. <u>General Background Facts</u>

On <u>January 27, 2018</u>, PL initiated EEO contact. During this month, the PL also sent an email to Human Resources to complain of harassment, retaliation, and discrimination.  [PL Exh. A, PL depo, pg 165, lines 23 – 25 and page 166, lines 1 - 14]. PL also sought assistance from EAP.  [PL Exh. A, PL depo, pg 169, lines 15 - 22].

On <u>February 12, 2018</u>, at 6:04pm, PL called DEF to use FMLA leave and was approved. PL had been diagnosed with a meniscus tear in his right knee. [PL Exh. B, Dr. Inacay records]. This was not the first time that PL had been out on injury leave. [PL Exh. C FMLA email]. On this day, he was unable to stand for long periods of time nor lift heavy objects.

Later that night, PL became hungry and needed to take his medicine. So, he decided to drive to get some food and was arrested for possession of a vape pen with cannabis oil. The arrest time was approximately 11:48pm and PL was bailed out the next day <u>February 13, 2018</u>. Ultimately, an Order of Dismissal was issued in that case. [Pl. Exh. D, Order Dismissal].

On <u>May 8, 2018</u>, PL filed a formal EEO Complaint against Mr. Spanos and Ms. Crompton. On <u>May 21, 2018</u>, PL came in to start his shift and was given an investigative interview (hereinafter "ii") by Mr. Gray and Ms. Tramiel. During the ii, PL mentioned the retaliation he was experiencing. [Pl. Exh. E, ii 05/21/2018, paragraph 8A]. That same day, PL sustained a new work injury and was fitted with a knee immobilizer and crutches. [Pl. Exh. F, Tampa General Hospital]. He was instructed to do physical tasks by Ms. Tramiel despite her knowledge of his injury and FMLA status. [Pl. Exh. A,

PL depo., pg. 162, lines 9 – 25 and pg 163, lines 1 – 2 and pg. 163, lines 11 - 25].   PL was out of work from <u>May 21, 2018 to October of 2018</u>.

On <u>July 14, 2018</u>, Ms. Tramiel did an ii of PL[1]. [PL. Exh. G, ii July 14, 2018]. She asked about his FMLA usage and his arrest. On <u>July 27, 2018</u>, Ms. Tramiel issued PL a Notice of Removal. [Pl. Exhibit H, Notice of Removal]. This Notice of Removal was seconded by Mr. Wray. [PL Exh. A, PL depo., pg. 106, line 3 - 9]. They knew of the FMLA condition and EEO activity of PL. [PL Exh. A, PL depo., pg. 130, line 7 – 9; PL Exh. K; PL Exh. L].

PL entered a Last Chance Agreement (hereinafter "LCA") dated <u>September 5, 2018</u>, on <u>September 7, 2018</u>. On <u>October 27, 2018</u>, PL was approved for light-duty status and returned to work. [PL Exh. I, light duty]. The light-duty approval came with the graveyard shift: 8:00pm to 4:30am. [PL Exh. A, PL depo., pg. 118, lines 5 - 9]. This was further harassment, discrimination, and retaliation. [PL Exh. A, PL depo., pg. 170, lines 17 - 20].

On <u>October 28, 2018</u>, PL was working under his light duty status. That day, PL took his first fifteen (15) minute break. PL was not on the break schedule for that day. [PL Exh. J, break schedule]. While on break, he took

---

[1] The Plaintiff was called in for this investigative interview despite being out on injury leave.

his prescribed pain medication. [PL Exh. A, PL depo., pg. 164, lines 9 - 14].

This caused him to fall asleep and overstay his break by twenty-one (21)

minutes.

On <u>October 29, 2018</u>, PL was subjected to an ii by Mr. Felix and on

<u>November 3, 2018</u>, PL was removed from his employment. All of the PL's

supervisors were fully aware of his injury and FMLA status. [Pl. Exh. A, PL

depo., pg. 128, lines 8 – 25 and pg. 129, lines 1 – 4; PL Exh. K; PL Exh. L]. Mr.

Felix was also aware of PL's national origin. [Pl. Exh. A, PL depo., pg. 135,

lines 16 - 23]. There is no doubt that PL is disabled. [Pl. Exh. A, PL depo., pg.

156, lines 5 – 16; PL Exh. M].  On <u>November 5, 2018</u>, PL initiated contact with

the EEO. On <u>December 13, 2018</u>, PL filed a formal EEO Complaint.

## B.   <u>Disputed Material Facts:</u>

DEF alleges that PL did not have a disability. This fact is in dispute.

PL was approved for FMLA on numerous occasions and light duty. [Pl.

Exh. H, Light Duty approved; PL Exh. M]. The PL has provided medical

documentation to the DEF.[2] All of these records detailed the nature of his

---

[2] The PL's medical records and the letter from Dr. Torres is hardly a "conclusory assertion of a physical impairment" as the Defendant would suggest.

injury. [PL Exh. B, Dr. Inacay; PL Exh. N Dr. Torres letter; PL Exh. O, Dr. Ubani; PL Exh. P Tampa General medical records].

DEF alleges they had no knowledge of PL's injury and disability. These facts are in dispute. PL supplied the DEF with medical records. [PL Exh. O, Dr. Ubani; PL Exh. K]. Ms. Tramiel admitted she saw PL's injury documentation in the injury comp office. [PL Exh. Q, Tramiel depo., pg. 67 of 198, lines 10 – 21; PL Exh. G, number 5]. The injury comp office made all of the supervisors aware of the PL's injury.  [PL Exh. Q, Tramiel depo., pg. 69 of 198, lines 4 – 11].

DEF alleges that PL was arrested around the same time he requested FMLA leave.  This fact is disputed. The PL called in at 6:04pm, but wasn't arrested until close to midnight. He was booked in the following day. [PL Exh. R, Arrest Affidavit].

DEF alleges that PL did not deny that he was in possession of cannabis oil. This fact is disputed. PL entered a Not Guilty plea and stood on his right of innocence until proven guilty. The charges were dismissed. [PL Exh. D].

DEF alleges that PL did not provide Ms. Tramiel with proof for his FMLA leave.  This fact is disputed. At all times relevant, PL submitted medical documentation to management.  [PL Exh. N; PL Exh. K].

DEF alleges that PL should have informed them of his arrest. This fact is in dispute. Mr. Wray could not cite any rule that requires employees to notify of off-duty behavior. [Pl. Exh. S, Wray depo., pg. 161 of 175, lines 19 – 24 and pg. 164, lines 1 - 4].

DEF asserts that PL took an unauthorized break that resulted in his termination. This fact is disputed. Employees are allowed two (2) fifteen (15) minute breaks. PL asserts there is no rule as to when you can use your breaks. [Pl. Exh. O, Felix depo., pg. 74 of 133, lines 15 - 16]. PL was not on the break schedule for that day. [Pl. Exh. I, break schedule]. Mr. Felix could say when PL was to take a break. [Pl. Exh. T, Felix depo., pg. 76 of 133, lines 2 - 11].

DEF asserts that there are no proper comparators. This fact is in dispute. Mr. Wray was arrested as a mail carrier and the other comparators were Mail Handlers. [Pl. Exh. S, Wray depo., pg. 47 of 175, lines 6 – 8].

DEF asserts that PL did not amend his pleadings to assert claims of the July Notice of Removal and Last Chance Agreement. This fact is in dispute. The PL's Amended Complaint filed on <u>October 01, 2021</u>, on page 4, paragraph 14, mentions the July Notice of Removal. [Pl. Exh. U, Amended Complaint].[3]

## C. LEGAL STANDARD

To state a Title VII claim, plaintiffs must allege that their employer's (or former employer's) actions were the product of "intentional discrimination on the basis of a prohibited factor." *Walker v. NationsBank of Fla., NA.*, 53 F.3d 1548, 1557 (11th Cir. 1995) (discussing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). Intentional discrimination is a question of fact that plaintiffs may establish through either direct or circumstantial evidence. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002).

Under the *McDonnell Douglas* **burden-shifting** framework, plaintiffs must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Doing so creates a rebuttable presumption of unlawful

---

[3] He was discriminated against and retaliated against.

discrimination. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983). Once established, the **burden shifts** to the employer to rebut the presumption "by producing evidence that its action was taken for some legitimate, non-discriminatory reason." *Joe's Stone Crabs*, 296 F.3d at 1272. If the employer does, the presumption is rebutted, and the inquiry "proceeds to a new level of specificity," where the plaintiff bears the burden of showing that the proffered reason is just pretext for unlawful discrimination. *Burdine*, 450 U.S. at 255-56.

To establish a **prima facie** case under the *McDonnell Douglas* **burden-shifting** framework, a plaintiff must show: "(1) that he belongs to a protected class, (2) that he was subjected to an adverse employment action, (3) that he was qualified to perform the job in question, and (4) that his employer treated similarly situated employees outside his class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc) (internal quotation marks omitted). *See Williams v. Hous. Opps. for Persons with Exceptionalities*, 777 F. App'x 451, 457 (11th Cir. 2019).

### D.  Similarly Situated Comparators

Ordinarily, a similarly situated comparator: (i) will have engaged in the same basic conduct (or misconduct) as the plaintiff; (ii) will have been

subject to the same employment policy, guideline, or rule as the plaintiff; (iii) will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff; and (iv) will share the plaintiff's employment or disciplinary history. 918 F. 3d 1213 (11th Cir. 2019). Further, titles are not determinative with respect to who is regarded as a proper comparator. A proper comparator, within this context, is someone who was subjected to the same policy, but who was punished less severely when he violated the policy.

Mr. Felix was arrested for a suspended license. [PL Exh. T, Felix depo, pg. 9 of 133, lines 20 - 23]. At the time of his arrest, he was a mail handler for the DEF. [PL Exh. T, Felix depo., pg. 10 of 133, lines 22 - 24]. Coincidentally, Mr. Felix cannot say that he was disciplined for his arrest. [PL Exh. T, Felix depo., page 10 of 133, lines 4 - 9]. He also has no recollection that he notified the DEF of his arrest. [PL Exh. T, Felix depo., pg. 10 of 133, lines 15 - 17]. According to the DEF, the fact that the PL did not report his arrest to management caused his termination[4].

---

[4] See, Defendant's Second Motion for Summary Judgment on page 8, paragraph number 2.

Cynthia Frizzle is a Caucasian female who was supervised by Mr. Felix. [PL Exh. T, Felix depo., pg. 80 of 133, lines 2 – 3 and pg. 81 of 133, lines 9 - 11]. She was a mail handler and was on a Last Chance Agreement. [PL Exh. S, Wray depo., pg. 136 of 175, lines 15 – 20]. From January 25, 2017 to February 15, 2017, she was cited for unsatisfactory attendance and unscheduled leave thirteen (13) times on thirteen (13) different days. [PL Exh. V, Frizzell 14 day suspension]. The total of her missed time was three hundred and twelve (312) hours. [5]

Ms. Frizzell was allowed to provide medical documentation to support her absences. [PL Exh. V, Frizzell 14 day suspension]. They were provided on February 17, 2017, almost a month after her first unexcused absence on January 25, 2017. The PL provided his medical documentation approximately one week after his interview. [PL Exh. N, Dr. Torres letter]. Ms. Frizzell entered into a LCA on December 4, 2017. [PL Exh. W, Frizzell Removal Notice]. The LCA states she violated six (6) times over six (6) days

---

[5] By contrast, the Plaintiff actually came to work, but overstayed a break by twenty-one (21) minutes. This behavior got him fired almost immediately.

before she was fired. [PL Exh. W, Frizzell Removal Notice]. Her violations total 24.10 hours. [6]

Mr. Wray is a Caucasian male who currently works for DEF. [PL Exh. S, Wray depo., pg. 16 of 175, lines 6 - 8]. He was arrested numerous times and not terminated[7]. [PL Exh. S, Wray depo., pg. 10 of 175, lines 15 - 24]. Despite his numerous arrests, Mr. Wray was never issued a Notice of Removal. [PL Exh. S, Wray depo., pg. 11 of 175, lines 12 - 14].

Mr. Wray's arrest history goes back to at least 2005; a span of seventeen (17) years.[8] He was arrested in 2005 for DUI[9] [PL Exh. X, Wray arrests], in 2010 for Refusal of a Breath, Blood, Urine test,[10] in 2013 for DUI,[11] in 2013 for Refusal to Submit to Testing,[12] in 2013 for felony DUI,[13] in 2014 for misdemeanor Driving While License Suspended or Revoked,[14] and in 2014 for felony DUI.[15] At one point, he was on probation while

---

[6] In contrast, the Plaintiff allegedly violated once on one (1) day for a total of twenty-one (21) minutes and was terminated almost immediately.

[7] MDO Jeremy Wray has been arrested so many times as an employee that he cannot recall how many times it has happened.

[8] Pinellas County Case No.: 2005-CT-045504-A.

[9] Pinellas County Case No: 2010-CT-106988-A.

[10] Pinellas County Case No.: 2010-CT-106993-A.

[11] Pinellas County Case No.: 2013-CF-014326-A.

[12] Pinellas County Case No.: 2013-CT-086223-A.

[13] Pinellas County Case No.: 2013-CT-091458-A.

[14] Pinellas County Case No.: 2014-CT-089048000-A.

[15] Pinellas County Case No.: 2014-CF-018082000-A.

employed by DEF and did not inform them. [PL Exh. S, Wray depo., pg. 160 of 175, lines 14 – 16 and pg. 161, lines 14 - 18]. When Mr. Wray was pressed on how he spent so many days in jail and was not fired, he had no idea how he managed to do that. [PL Exh. S, Wray depo., pg. 11 of 175, lines 21 – 23 and PL Exh. X].

Trey Darrigo is a Caucasian male who was a Mail Handler supervised by Mr. Felix. [PL Exh. Y, Darrigo LCA document, page 3].  He was suspended for fourteen (14) days for being AWOL. On July 7, 2014, he was arrested for DUI, Possession of Controlled Substance, and Possession of Cannabis. [PL Exh. Z, Darrigo arrest documents]. On January 30, 2018, he was issued a Notice of Removal. [PL Exh. Y]. After his grievance process, the notice was rescinded and he received a Last Chance Agreement. On March 21, 2018, Mr. Darrigo was drunk at work and refused to take a breath alcohol test. [PL Exh. Y]. On August 27, 2018, while on his Last Chance Agreement, he threatened the Plant Manager.  [PL Exh. AA, Darrigo threat]. Mr. Darrigo was not removed despite the violations of his Last Chance Agreement.

## I.    DEFENDANT'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.

At all times relevant, Ms. Tramiel was one of PL's supervisors. [PL Exh. Q, Tramiel depo., pg. 15 of 198, lines 2 – 5]. She conducted an investigative interview of PL on <u>May 21, 2018</u>, at the behest of Mr. Stonely and Ms. Crompton. [PL Exh. Q, Tramiel depo., pg. 18 of 198, lines 17 – 21 and pg. 20 of 198, lines 7 - 14]. During that interview, PL revealed that he had a medical note on file stating that he could not load. [PL Exh. E, paragraph 3A]. Ms. Tramiel never investigated whether or not the PL had a medical note.  [PL Exh. Q, Tramiel depo., pg. 15 of 198, lines 2 – 5]. [16]

Much of DEFs rationale for the Notice of Removal hinges on the PL being arrested while out on FMLA. Ms. Tramiel admitted that she is unaware of a policy that forbids getting food while out on FMLA. [PL Exh. Q, Tramiel depo., pg. 91 of 198, lines 3 – 5]. Next, Ms. Tramiel knew of PL's previous FMLA approvals due to his injury. [PL Exh. Q, Tramiel depo., pg. 109 of 198, lines 10 – 13].  While PL's arrest was unfortunate, even ELM 665.25 states "…drugs while on duty or on postal premises." [PL Exh. H, page 2]. The DEF has admitted PL was not arrested on postal premises and was not on duty at the time.

---

[16] The facts are, PL did have a note on file from his physician dated <u>March 26, 2018</u> stating that he could not load. [Pl. Exhibit K, Dr. Ubani letter].

Ms. Tramiel was also the supervisor for comparator, Trey Darrigo. [PL
Exh. Q, Tramiel depo., pg. 142 of 198, lines 2 – 12]. She could not recall
issuing Mr. Darrigo a Notice of Removal for his arrest like she did with PL.
[PL Exh. Q, Tramiel depo., pg. 142 of 198, lines 22 – 24]. What she does recall
is Mr. Darrigo threatened a Plant Manager under her watch. [PL Exh. Q,
Tramiel depo., pg. 144 of 198, lines 8 – 10]. Yet, she can't say that she even
did an ii. [PL Exh. Q, Tramiel depo., pg. 144 of 198, lines 14 – 20].

## A. Retaliation Claim.

PL notified the DEF that he was being harassed due to having an
EEO against two (2) co-workers. [PL Exh. E, paragraph 8A]. According to
Ms. Tramiel, DEF was notified of this and of the fact that PL did not feel
comfortable at work around certain employees. [PL Exh. Q, Tramiel depo.,
pg. 36 of 198, lines 2 – 22]. It was the job of the supervisors to inform EEO
when employees report being retaliated against, harassed, or bullied. [PL
Exh. Q, Tramiel depo., pg. 46 of 198, lines 16 – 19].  Despite the PL notifying
his supervisors, in writing, no supervisor ever reported the claims to
anyone. [PL Exh. S, Wray depo., pg. 98 of 175, lines 11 – 14 and PL Exh. Q,

Tramiel depo., page 44 of 198, lines 17 – 23 and pg. 45 of 198, lines 24 – 25 and pg. 46 of 198, line 1].

Ms. Tramiel filed her own EEO suit against the DEF and named Mr. Wray as the discriminatory actor. [PL Exh. Q, Tramiel depo., pg. 14 of 198, lines 23 – 25, and pg. 14, lines 1 - 5]. She filed an EEO Complaint against him for racial discrimination and harassment. [PL Exh. Q, Tramiel depo., pg. 132 of 198, lines 3 – 5 and pg. 135 of 198, lines 5 - 8]. She went on to describe DEF as a hostile work environment.  [PL Exh. Q, Tramiel depo., pg. 136 of 198, lines 6 – 9 and PL Exh. BB, Tramiel email]. Even Ms. Tramiel feared retaliation when she worked there. [PL Exh. Q, Tramiel depo., pg. 137 of 198, lines 16 – 17]. During her period of employment, there were numerous investigations of racial discrimination and a hostile work environment. [PL Exh. Q, Tramiel depo., pg. 152 of 198, lines 5 – 12].

## II.   DEFENDANT'S EXPLANATIONS OF ITS ACTIONS ARE PRETEXTUAL IN NATURE AND NOT WORTHY OF BELIEF

When a Defendant presents nondiscriminatory reasons for adverse actions, plaintiff has the opportunity to demonstrate that the Defendant's articulated reason for the adverse action is a mere pretext for discrimination. *See* <u>Cooper v. Southern Co</u>., 390 F.3d 695, 725 (11th Cir. 2004)

(*quoting* <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997) (to show that the employer's reasons were pretextual, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence).

Relevant evidence that the trier of fact should consider when making a determination of pretext "would be evidence that [employees outside the Plaintiff's protected class were] involved in acts of comparable seriousness were nevertheless retained, or rehired." <u>Id</u> at 804. "Other evidence that may be relevant to any showing of pretext includes facts as to the [Defendant's] treatment of [Plaintiff] during his prior term of employment." <u>Id</u>; *See also* <u>Adams v. Fulton Cty., Ga.</u>, 397 Fed. Apps 611, 613 (11th Cir. 2010) (*quoting* "An employer's violation of its own normal hiring procedure may be evidence of pretext."). The DEF has argued that its decision to terminate the Plaintiff's employment was made for a lawful reason, and not as pretext to disguise discrimination based on a protected characteristic. This assertion is outweighed by the circumstantial evidence that the DEF terminated the PL for actions similar to those committed by other similarly situated employees

who are outside of his protected class. Even when good reasons are proffered by the employer, a plaintiff can . . . still show discrimination [by showing] employees with employment histories, like the Plaintiff's, were not subject to the same adverse employment action as the plaintiff.

Thus, rejection of the Defendant's proffered reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is required. See *St. Mary's Honor Center v. Hicks*, 113 S.Ct. 2742, 2749 (1993) (italics in original) (footnote omitted). In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt. See *Reeves v. Sanderson Plumbing Prods,, Inc.*, 530 U.S. 133, 147 (2000) (*citing Wright v. West*, 505 U.S. 277, 296 (1992).

It is quite possible that a jury could disbelieve the Defendant's reason(s) for PL's termination. The law is clear on this issue, if the trier of fact does not believe the employer to have given a truthful account of its

decision, it is reasonable to infer that the most likely explanation is the one

the employer cannot admit—that it acted for retaliatory or discriminatory

reasons. See *Ameristar Airways, Inc. v. Admin. Review Board.*, 650 F.3d 562, 569-

70 (5th Cir. 2011).

## B. Conclusion

For the above stated reasons, the Defendant's Motion for Summary

Judgment is due to be denied in every respect. The PL has presented

sufficient evidence to establish that he was subjected to unlawful

discrimination based upon his membership in several protected classes.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of November 2022, I
electronically filed the foregoing with the Clerk of the Court by using the
CM/ECF system, which will send a notice of electronic filing to all
registered users.

> **/s/ Ka'Juel Washington**
> By:_____
> KA'JUEL J. WASHINGTON, ESQ.
> Florida Bar No. 22125
> 37 N. Orange Ave., Suite 500
> Orlando, Florida 32801
> Tel. (407) 734-0402
> Fax: (407) 236-0430