## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TERRY ALCINDOR,

     Plaintiff,

v.                          Case No: 8:20-cv-1620-CEH-AEP

LOUIS DEJOY,

     Defendant.

_____

### <u>ORDER</u>

    In this action, Terry Alcindor, a former United States Postal Service ("USPS") employee, sues the Postmaster General for discrimination based on sex, race, and national origin, as well as retaliation based on his Equal Employment Opportunity activity. Doc. 36. He also brings claims for disability discrimination under the Rehabilitation Act ("RA") and retaliation under the Family and Medical Leave Act ("FMLA"). *Id.*

    This matter is now before the Court on Defendant's Motion for Summary Judgment (Doc. 67), Plaintiff's Response in Opposition (Doc. 77), Defendant's Reply (Doc. 80), and the parties' Joint Stipulation of Agreed Material Facts (Doc. 79). Upon careful consideration of the submissions, including deposition transcripts, declarations, legal memoranda, and other exhibits, the Court will grant summary judgment in favor of Defendant on all counts.

I.    FACTS[1]

A.    Plaintiff's Position and Chain of Command

Plaintiff Terry Alcindor identifies as a Black male of Haitian descent. Doc. 67-2 at 26. USPS hired him as a mail processing clerk on November 26, 2005. Doc. 67-3 at 2–4. He became a mail handler in September 2006 and served in that position until his termination. *Id.* at 3–4. Alcindor loaded, unloaded, and moved bulk mail, in addition to performing other mail-processing tasks. Doc. 67-4. Above him in the chain of command were Supervisors of Distribution Operations ("SDO"); Managers of Distribution Operations ("MDO") and the Plant Manager. Doc. 67-2 at 40–41. SDO Cassandra Tramiel was his immediate supervisor during the period relevant to this action. Doc. 67-5 ¶¶ 2–7.

B.    Plaintiff's Disciplinary History and Prior EEO Activity

Between 2006 and 2017, USPS disciplined Alcindor for unsatisfactory attendance, failure to follow instructions, unsatisfactory performance, threatening behavior, and insubordination. Doc. 67-6 at 5–38. He was repeatedly reprimanded for taking unauthorized breaks. *Id.* at 7–8, 9–10, 19–20.

In December 2017, MDO Kimberly Crompton learned that Alcindor had allegedly threatened a supervisor. Doc. 67-7 at 2–3. He was placed on Emergency

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the submissions, including declarations, depositions, and exhibits, as well as the Stipulation of Agreed Material Facts (Doc. 79). For purposes of summary judgment, the Court considers the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

Placement ("EP") status pending investigation. *Id.* SDO Michael Spanos conducted an investigative interview and issued Alcindor a Notice of Removal ("NOR") for violating USPS's zero-tolerance workplace violence policy. *Id.* at 4–14. After a grievance settlement process, the EP was rescinded and the NOR was reduced to a seven-day suspension. *Id.* at 15–16. On January 27, 2018, Alcindor contacted an EEO counselor and claimed that the EP and NOR constituted discrimination. Doc. 67-2 at 66–67. He filed a formal complaint on May 8, 2018, (Doc. 67-9) on which an administrative judge ultimately granted summary judgment for Defendant. Doc. 67-10.

### C.    Plaintiff's February 2018 FMLA Leave and Arrest

On February 12, 2018, Alcindor called the USPS Interactive Voice Recognition system and requested unscheduled FMLA leave. Doc. 67-2 at 69. He claimed to be incapacitated and unable to work. *Id.* In his deposition, Alcindor stated that he was unable to "stand or lift heavy things" that day due to knee pain. *Id.*

That evening, he drove 30 miles from his home to a restaurant to eat and take his medicine. *Id.* at 69, 76–84, 90. A Clearwater law enforcement officer stopped him several miles from the restaurant. Doc. 67-13. During the traffic stop, the officer smelled the odor of marijuana coming from the vehicle. *Id.* at 8. He searched Alcindor's car and found a small amount of marijuana and a vape pen containing cannabis oil. *Id.* Alcindor was arrested for felony possession of cannabis oil and

misdemeanor possession of drug paraphernalia. Doc. 67-17. He did not report this incident to Defendant.

In May, SDO Ramone Gray interviewed Alcindor about an unrelated incident of insubordination. Doc. 67-19 at 2–4. Based on this incident, USPS issued Alcindor a fourteen-day suspension for improper conduct and failure to follow instructions. *Id.* at 5–6. Shortly after the interview, Alcindor filed a claim stating that he had injured his right knee processing mail. Doc. 67-20; Doc. 67-2 at 100–101. He also submitted a physician's note stating that he would be unable to work from May 25 until June 11 due to injury. Doc. 67-21. However, he failed to return on June 12. Doc. 67-22 at 2–3. SDO Ernest Stoneley scheduled an interview regarding the attendance issues. *Id.*

In July, Tramiel learned of Alcindor's February arrest. (Doc. 67-5 ¶ 6). She interviewed him, and Alcindor confirmed that he had been arrested for possession of cannabis while on FMLA leave. *Id.* ¶¶ 10–11. He did not deny having the drug paraphernalia and cannabis oil. *Id.* ¶ 12. Alcindor stated that he drove to Clearwater that night to eat and take his medication. *Id.* ¶ 13. When asked why he called out three hours into his shift the following day, he explained that he was released from jail, took his medication, and passed out. *Id.*

Tramiel concluded that Plaintiff violated the rules of employee conduct. Doc. 67-5 ¶ 17. She determined that he fraudulently requested and took FMLA leave based on the fact that: (1) he was arrested for possession of cannabis oil and drug paraphernalia 30 miles from home while on unscheduled leave; (2) he claimed that

he drove to the restaurant to take medication even though he was arrested nearly an hour and a half after it closed; (3) he failed to provide medical documentation showing that he was incapacitated on that day; and (4) he did not report the incident to management. *Id.* ¶ 18. Tramiel submitted a request for Plaintiff's removal to MDO Jeremy Wray and the District Labor Relations office. *Id.* ¶ 19; Doc. 68-1. Wray concurred and Labor Relations prepared a Notice of Removal dated July 27, 2018 ("the July NOR"). *Id.* ¶ 20; Doc. 67-23. Tramiel signed the NOR and issued it to Alcindor. Doc. 67-5 ¶ 21.

### E.    Plaintiff's Last Chance Agreement and Termination

In August 2018, Alcindor submitted an EEO complaint based on the July NOR. Doc. 67-24 at 2–7. A union steward negotiated with USPS on Alcindor's behalf, and he was offered a Last Chance Agreement ("LCA"). Doc. 67-2 at 114–116. The LCA required him to refrain from improper conduct and absences without leave, as well as to maintain regular attendance for eighteen months. Doc. 67-25. In return, Defendant agreed to reinstate Alcindor, hold the July NOR in abeyance, and expunge it from his personnel records. *Id.* at 2–3. On September 7, Alcindor signed the LCA. Doc. 67-2 at 116–117. The agreement contained a clause waiving his rights to file complaints or appeals concerning any issue in the case and agreeing to withdraw any outstanding complaints. Doc. 67-25 at 3. Alcindor subsequently withdrew his EEO claim regarding the July NOR. Doc. 67-24 at 8.

He requested to be put on light duty scanning placards, and USPS approved this request starting October 27. Doc. 67-26. Internal rules allowed employees to take

two separate 15-minute breaks and a 30-minute break. Doc. 67-27 ¶ 3. However, they could not leave the building without permission. *Id.* On October 28, SDO Charles Felix noticed Alcindor leave at 10:39 p.m. and fail to return for a significant period. *Id.* ¶ 4. Felix pulled Alcindor's badge report, which revealed that he had left the workplace for 36 minutes. *Id.* ¶ 5.

Felix interviewed Alcindor regarding this suspected LCA violation. *Id.* ¶¶ 7–11. Alcindor did not deny leaving the building and taking an unauthorized break. *Id.* ¶ 8. Felix found that Alcindor's justification—that he took medication and dozed off—did not excuse the conduct because he did not obtain permission before leaving or alert management after returning. *Id.* Felix concluded that Alcindor violated the LCA. *Id.* ¶ 9. He pulled all documents relevant to the violation, prepared a request for Alcindor's removal, and sent it to Crompton and Labor Relations for independent review. *Id.* ¶ 10; Doc. 67-28. Crompton concurred. Doc. 67-27 ¶ 11. Labor Relations also approved and prepared a Notice Implementing Removal Under Last Chance Agreement, dated November 2, 2018. Doc. 67-29. Felix signed the NOR and it was issued to Alcindor, who was terminated on November 3. Doc. 67-27 ¶ 13. USPS later hired Samuel Chery, a Black Haitian-American male, to replace Alcindor. Doc. 67-35 ¶ 12.

Alcindor contacted EEO regarding his termination on November 5, 2018. Doc. 67-30. He filed a formal complaint on December 13 alleging that USPS discriminated against him based on his sex, race, national origin, and disability, and retaliated against him based on his prior EEO activities. Doc. 67-31. After

investigation, an administrative judge granted summary judgment for Defendant, finding no evidence of discrimination. Doc. 67-32.

### F.    Procedural History

Alcindor alleges federal discrimination and retaliation under Title VII of the Civil Rights Act of 1964, discrimination pursuant to the Rehabilitation Act of 1973 ("RA"), and retaliation under the Family and Medical Leave Act ("FMLA"). Doc. 36. The Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331. Alcindor's claims are based on three employment actions. *Id.* ¶¶ 14–16. They are: (1) the Notice of Removal issued on July 27, 2018; (2) the LCA executed on September 7, 2018, and (3) his termination on November 3, 2018. *Id.* Now before the Court is Defendant's motion for summary judgment. Doc. 67.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the

moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

## III.   DISCUSSION

### A.        Title VII Discrimination and Retaliation Claims

Because Alcindor was a federal employee, Title VII's federal-sector provision governs his claims. *See* 42 U.S.C. § 2000e-16(a). The provision provides that all personnel actions "shall be made free from any discrimination based on race, color, religion, sex, or national origin." *Id.* The three archetypal Title VII claims are for (1) disparate treatment; (2) hostile environment; and (3) retaliation. *See Babb v. Sec'y, Dep't of Veterans Affs.* ("*Babb II*"), 992 F.3d 1193, 1204–05 (11th Cir. 2021). Plaintiff

brings claims for disparate treatment and retaliation based on the July 2018 NOR, the September 2018 LCA, and his termination.

*1. July 2018 NOR and September 2018 LCA*

Defendant argues that Alcindor's claims based on the July 2018 NOR and September 2018 LCA fail at the outset because: (1) they are not in the complaint; (2) Alcindor did not exhaust his administrative remedies; and (3) he knowingly and voluntarily waived his right to bring such claims by signing the LCA. Doc. 67 at 12–14. Defendant also argues that the claims fail on the merits. *Id.* at 14–25.

Alcindor responds that these claims were properly pled in the Amended Complaint. Doc. 77 at 9. Because the Complaint clearly cites both incidents as instances of discrimination (Doc. 36 ¶¶ 14–15), Defendant's argument that these claims are not properly before the Court is unpersuasive.

However, Alcindor fails to address Defendant's exhaustion and waiver arguments. Based on his failure to respond and the evidence in the record, any Title VII or RA claims based on the July NOR or September LCA are barred. First, "[a] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed. Also, [w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." *Jones v. Bank of Am., N.A.,* 564 F. App'x 432, 434 (11th Cir. 2014) (citations omitted). Plaintiff offers no response to the exhaustion or waiver arguments and thus they are unopposed.

Next, a federal employee must exhaust his administrative remedies before filing a Title VII or RA claim. *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008). Here, Alcindor could have exhausted his administrative remedies by contacting an EEO counselor within 45 days of the allegedly discriminatory acts. *See id.* at 1344. However, he did not contact a counselor until November 5, 2018, so he can only bring claims based on events occurring on or after September 21, 2018. Doc. 67-30. Thus, Alcindor's claims based on the NOR—issued on July 27, 2018—and the LCA—signed on September 7, 2018—are unexhausted and barred. Docs. 67-23, 67-25.

Even if the NOR and LCA claims had been exhausted, Defendant argues that Alcindor knowingly and voluntarily waived his right to bring them when he signed the LCA. Doc. 67-24 at 8. Defendant further argues that Alcindor's waiver was knowing and voluntary based on his education and experience, the fact that a union steward represented him in the grievance process, and the clear and unambiguous release language in the agreement. Doc. 67 at 13–14. Finally, Defendant argues that the LCA provided Alcindor with the benefit of continued employment, and that he cannot seek both the benefit of the settlement and to bring the claims he agreed to settle. *Id.* at 14. Again, Plaintiff fails to respond, so this argument is unopposed. *Jones*, 564 F. App'x at 434.

The LCA includes the following clause:

> I, Terry Alcindor, have read the provisions of this Agreement and fully understand the meaning and intent of same . . . I voluntarily waive my rights and agree not to file any complaints or appeals concerning any issue in this

case and withdraw any that are outstanding. I have entered into this agreement voluntarily and without coercion of any sort and intend to be bound by its terms . . .

Doc. 67-25 at 3.

Thus, the Court finds that Alcindor knowingly and voluntarily waived his right to bring claims based on the July NOR and September LCA. The LCA provided the benefit of continued employment, and "one who agrees to settle his claim[s] cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim[s] he agreed to settle." *Kirby v. Dole,* 736 F.2d 661, 664 (11th Cir. 1984). Because Alcindor has both failed to exhaust his administrative remedies and waived his right to bring claims based on these incidents, summary judgment is due to be granted in favor of Defendant on these claims.

### 2. Termination

Alcindor claims that Defendant unlawfully terminated his employment on November 3, 2018. He alleges discrimination based on sex, race, and national origin under Title VII and retaliation based on his protected EEO activity. Doc. 36 ¶¶ 14–24. The Court first addresses discrimination and then retaliation.

Eleventh Circuit law governing Title VII claims for federal-sector employees has recently changed. Previously, the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) applied to such claims that were based on circumstantial evidence. Now, the framework's second and third steps no longer apply. Nevertheless, *McDonnell Douglas* remains relevant to federal-

employee claims like Alcindor's because the Eleventh Circuit has retained some of the framework.

Step one of *McDonnell Douglas* requires that an employee establish a *prima facie* case of discrimination by showing that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was qualified to perform the job in question; and (4) his employer treated "similarly situated" employees outside his class more favorably. *See Lewis v. City of Union City* ("*Lewis I*"), 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). The Supreme Court's decision in *Babb v. Wilkie* ("*Babb I*"), 140 S. Ct. 1168 (2020) abrogated the second and third burden-shifting steps of the framework in federal-sector cases. The *Babb I* Court examined the language in the Age Discrimination in Employment Act ("ADEA") and concluded that "age must be the but-for cause of *differential treatment*, not . . . a but-for cause of the *ultimate decision*." *Id.* at 1171–74 (emphasis in original). On remand from *Babb I*, the Eleventh Circuit applied this same standard to federal-sector Title VII claims. *See Babb II*, 992 F.3d at 1204–05. Together, *Babb I* and *Babb II* eliminated the requirement that a federal employee must prove discrimination was a but-for cause of the adverse employment action.

However, the *Babb* opinions did not address the first or fourth steps of *McDonnell Douglas*. *See Lewis v. Sec'y of the U.S. Air Force* ("*Lewis III*"), No. 20-12463, 2022 WL 2377164 at *10 (11th Cir. June 30, 2022). Thus, "a federal sector employee alleging Title VII [or] ADEA claims must still establish a *prima facie* case that a

decision was not 'made free from any discrimination,' and neither *Babb I* nor *Babb II* suggested that the comparator analysis in *Lewis I* is inappropriate under the new standards." *Id*. In several unpublished decisions, the Eleventh Circuit has continued to require that plaintiffs satisfy the first step of the *McDonnell Douglas* framework by establishing a *prima facie* case of discrimination or retaliation. *Troupe v. DeJoy*, 861 F. App'x 291, 294 (11th Cir. 2021) per curiam (discrimination); *Malone v. U.S. Att'y Gen.*, 858 F. App'x 296, 303 (11th Cir. 2021) (retaliation); *Varnedoe v. Postmaster Gen.,* No. 21-11186, 2022 WL 35614, at *2 (11th Cir. Jan. 4, 2022) (per curiam) (retaliation).

If an employee cannot proffer a comparator, he can nevertheless survive summary judgment if he presents a "convincing mosaic of circumstantial evidence." *Troupe v. DeJoy,* 861 F. App'x 291, 294 (11th Cir. 2021) (quoting *Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321, 1328 (11th Cir. 2011)). "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City* ("*Lewis II*"), 934 F.3d 1169, 1185 (11th Cir. 2019) (citation omitted).

The Court now turns to Alcindor's termination claim. To establish a *prima facie* discrimination case, he must demonstrate "that [his] employer treated 'similarly

situated' employees outside [his] class more favorably." *Lewis I*, 918 F.3d at 1220–21. To do so, Plaintiff "must show that [he] and [his] comparators are 'similarly situated in all material respects.'" *Id.* at 1226. "This determination relies on the individuals' 'substantive likenesses,' and a comparator may be sufficiently similar if [] he has 'engaged in the same basic conduct (or misconduct) as the plaintiff,' was subject to the same employment policies as the plaintiff, had the same supervisor, and 'share[d] the plaintiff's employment or disciplinary history.'" *Lewis III,* 2022 WL 2377164 at *9 (quoting *Lewis I,* 918 F.3d at 1227–28).

Alcindor puts forward four comparators. Doc. 36 ¶¶ 20–23. Specifically, he names Trey Darrigo, a White male of Italian descent; SDO Philip Renda, a White male; Jeremy Wray, a White male; and Cynthia Frizzell, a White female. *Id.* Based on the following analysis, the Court finds that none of the four are proper comparators.

a.    *Wray and Renda*

Alcindor names Wray and Renda as comparators who were also arrested while employed at USPS. Doc. 36 ¶¶ 21–22. Defendant argues that they are not proper comparators because they were members of management and worked under different supervisors than Alcindor. Furthermore, Defendant asserts there is no evidence that: (1) the individuals who disciplined Alcindor knew of Wray and Renda's arrest records or had the authority to discipline them; (2) either individual engaged in the same basic conduct as Alcindor (leaving the work building without

permission and taking an unauthorized break while subject to an LCA); or (3) their disciplinary records were similar to Alcindor's. Doc. 67 at 18, 26.

Alcindor responds that Wray is a proper comparator because he was arrested while working as a mail carrier. Doc. 77 at 13–14. He argues that Wray was not terminated despite numerous arrests and failing to inform Defendant that he was on probation. *Id.* Alcindor fails to respond to the arguments about why Wray is not a proper comparator in the context of his termination, however, and makes no response to any arguments about Renda. Defendant replies that Alcindor and Wray are distinguishable because Wray was not arrested for drug possession and his DUI arrests occurred several years prior to Alcindor's arrest. Doc. 80 at 6–7. Defendant also argues that there is no evidence Wray's supervisors knew about any arrests he was not disciplined for, Wray only worked as a manager at the Ybor facility, and he and Alcindor did not work under the same immediate supervisors. *Id.*

The Court agrees that neither Renda nor Wray are proper comparators. Renda, a White male, could not be a comparator for Alcindor's sex discrimination claim, because he is also a male. Doc. 36 ¶ 21. Additionally, there is no evidence of Renda's national origin, so he could not serve as a comparator for a national origin claim. Alcindor also fails to submit any response to Defendant's numerous arguments for why Renda is not a proper comparator, so the Court deems those arguments to be unopposed. *Jones*, 564 F. App'x at 434. Furthermore, there is no evidence suggesting that Renda had a similar disciplinary record, that he and Alcindor worked under the same supervisor, or that Renda's supervisor knew of his

arrests. *See Lewis*, 918 F.3d at 1227–28. As such, a reasonable jury could not find that Renda was similarly situated to Alcindor.

Wray, a male, would not be a proper comparator for Alcindor's sex discrimination claim. Doc. 36 ¶ 22. Nor would he be a proper comparator for any of the other claims. Wray served as a Manager of Distribution Operations at the times relevant to this action, not a mail-handler like Alcindor. Doc. 67-36 ¶ 1. He was supervised by Maryann Maines, whereas Alcindor was supervised by Tramiel. *Id.* ¶ 11. There is also no evidence in the record that Wray's disciplinary record was as extensive as Alcindor's, or that Wray took unauthorized breaks in violation of an LCA. Finally, there is no evidence that the individuals who disciplined Alcindor knew of Wray's arrests or had the authority to discipline Wray, as Alcindor conceded at his deposition. Doc. 67-2 at 149–153.

Thus, because there is no evidence that Wray "engaged in the same basic conduct (or misconduct)," he would not be a proper comparator. *Lewis I*, 918 F.3d at 1227. Moreover, Wray is not a valid comparator because he answered to a different supervisor and was a member of management rather than a mail handler. *Scott v. Donahoe,* No. 8:14-CV-1620-T-33TGW, 2019 WL 553343, at *9 (M.D. Fla. Feb. 12, 2019) (concluding that a non-supervisor was not similarly situated to a supervisor); *Shell v. AT&T Corp.,* No. 20-12533, 2021 WL 3929916, at *7 (11th Cir. Sept. 2, 2021) (same). Finally, Wray was not "similarly situated" based on the lack of evidence suggesting that Felix or Crompton, who terminated Alcindor, knew of any similar acts committed by Wray, or had the authority to discipline him. *See Landry v. Lincare,*

*Inc.,* 579 F. App'x. 734, 737 (11th Cir. 2014) ("[T]he comparator's actions are relevant only if the plaintiff shows that the decisionmaker knew of the comparator's prior similar acts and did not discipline the comparator"); *see also McPhie v. Yeager,* 819 F. App'x 696, 700 (11th Cir. 2020).

Due to Wray and Renda's substantially different employment roles, disciplinary history, and other factors discussed above, neither is a valid comparator. *See Jones v. City of Birmingham,* No. 21-12962, 2022 WL 4393344 at *3 (11th Cir. Sept. 23, 2022) (affirming summary judgment for defendant where plaintiff "failed to produce any evidence that he and [the proffered comparator] had similar employment or disciplinary history").

> b.   *Darrigo and Frizzell*

Alcindor identifies Trey Darrigo, a White Male of European ancestry, as a similarly situated individual with "greater egregious conducts." Doc. 36 ¶ 20. He also claims that Cynthia Frizzell, a White female of European ancestry, is a proper comparator based on her attendance issues. *Id.* ¶ 23. Defendant argues that Frizzell had a different supervisor, and that there is no evidence to suggest she or Darrigo had disciplinary records similar to Alcindor's. Doc. 67 at 19. Defendant also argues there is no evidence they engaged in the same basic conduct as Plaintiff. *Id.* at 26. Alcindor responds that he and Darrigo shared the same supervisor, and that Darrigo is similarly situated because of a 2014 arrest and 2017 suspension for being absent without leave. Doc. 77 at 14–16. Finally, Alcindor notes that Tramiel could not recall issuing Darrigo a NOR for his conduct. *Id.* Defendant replies that Darrigo did

not violate his LCA, which was only conditioned on attendance, not his conduct. Doc. 80 at 8. Defendant also states that Frizzell was not on an LCA when she was cited for poor attendance in 2017. *Id.* at 9.

Frizzell is not a proper comparator. As a threshold matter, there is no evidence of her national origin, so she could not serve as a comparator for the national origin discrimination claim. Next, she was supervised (and removed) by Spanos, whereas Plaintiff was supervised by Tramiel and removed by Felix and Crompton. Doc. 67-40 at 5; Doc. 67-26 ¶ 10. Similarly situated employees will "ordinarily (although not invariably) have been under the jurisdiction of the same supervisor." *Lewis I*, 918 F.3d at 1227. Although Frizzell was subject to an LCA when removed, her LCA differed from Alcindor's. Specifically, her LCA was conditioned on attendance, whereas Alcindor's was conditioned on both attendance and conduct. Doc. 67-40 at 3. Furthermore, Alcindor provides no evidence that Frizzell left the work building without permission and took an unauthorized break— the "same basic conduct" that led to Alcindor's termination. *Lewis* I, 918 F.3d at 1227. Based on the foregoing factors, Frizzell and Alcindor are not similarly situated.

Darrigo is not a valid comparator either. As a male, Darrigo could not serve as a comparator for Alcindor's gender discrimination claim. Next, there is no evidence he engaged in the same basic conduct as Alcindor, the conditions of his LCA significantly differed from Alcindor's, and Darrigo did not violate any condition of his LCA that would trigger his removal. Doc. 67-39; Doc. 67-35 ¶ 10. Nor does Plaintiff provide any evidence that Darrigo engaged in the same basic conduct that

led to his termination: leaving the work building without permission and taking an unauthorized break.

Plaintiff claims that Darrigo was treated more favorably because he was not removed after refusing to take a breath alcohol test and threatening a Plant Manager while on an LCA. Doc. 36 ¶ 20. However, in addition to the misconduct being different from Alcindor's, Darrigo did not violate a condition of his LCA to trigger removal, as MDO Crompton stated in her declaration. Doc. 67-35 ¶ 10. Thus, neither Darrigo nor Frizzell are valid comparators. *See Jones*, 2022 WL 4393344 at \*3 (affirming summary judgment for defendant where plaintiff "failed to produce any evidence that he and [the proffered comparator] had similar employment or disciplinary history").

In sum, although a valid comparator need not be identical to Alcindor in all but his protected characteristic, none of his proffered comparators are sufficiently similar in their job duties, responsibilities, and misconduct that a reasonable jury could conclude Alcindor was treated less favorably than them based on sex, national origin, or race. Indeed, there is no evidence that discrimination played a role in Defendant's conduct at all, and Alcindor has thus failed to establish a *prima facie* case of discrimination. In addition, his discrimination claims are weakened by the fact that he was replaced by a Black, Haitian-American male. Doc. 67-35 ¶ 12. This is additional circumstantial evidence that Plaintiff's termination was not based on sex, race, or national origin. *Smith v. Regis Corp.,* No. 1:20-CV-258-WLS, 2021 WL 9629464, at \*6 (M.D. Ga. Dec. 14, 2021).

c.      *Retaliation - Prior Protected EEO Activities*

The Court turns next to Plaintiff's retaliation claim. Doc. 36 at 4. Defendant argues that Felix had no knowledge of Alcindor's EEO Activity prior to investigating his unauthorized break and terminating him. Doc. 87 at 28. Defendant also argues that Alcindor's vague reference to EEO activity during the investigative interview does not create an inference of causation. *Id.*; Doc. 67-27 at 11. Finally, Defendant argues that the claim fails due to the five-plus month gap between Crompton's knowledge and the termination, as well as Alcindor's intervening misconduct. Doc. 67 at 28–29.

Alcindor responds that he notified Defendant he was being harassed due to a prior EEO complaint. Doc. 77 at 16. He claims that his supervisors were obligated to inform EEO that he was being "retaliated against, harassed, or bullied." *Id.* He also details an unrelated EEO suit Tramiel filed against Defendant for racial discrimination and hostile work environment. *Id.* at 17–18. Defendant replies that Alcindor fails to raise an issue of material fact and that Tramiel's complaints have no bearing on his claims. Doc. 80 at 9–10.

Title VII's federal-sector mandate that "[a]ll personnel actions . . . shall be made free of discrimination" also applies to retaliation. *See Lewis,* 2022 WL 2377164 at *12. To establish a *prima facie* case of retaliation, a plaintiff must show that he "(1) engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) established a causal link between the protected activity and the adverse action." *Malone*, 858 F. App'x at 303.

The Court starts with the third element—causation—and finds that Alcindor's claim fails based on a lack of evidence of causation. "If a decisionmaker does not know about an individual's protected conduct, then [he] cannot act in retaliation based on that conduct." *Durr  v. Sec'y of Dep't of Veterans Affs.,* 2022 WL 2315086, at *2 (11th Cir. June 28, 2022). Thus, "a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Duncan v. Alabama,* 734 F. App'x 637, 641 (11th Cir. 2018) (quoting *Clover v. Total Sys. Servs.,* Inc., 176 F.3d 1346, 1354 (11th Cir. 1999)).

In place of direct evidence, a plaintiff may establish causation by showing a close temporal proximity between the employer's discovery of the protected activity and the adverse action. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). But mere temporal proximity, without more, must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). In the face of unrebutted evidence that the decisionmaker did not have knowledge of the protected activity, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection [because] a 'decision maker cannot have been motivated to retaliate by something unknown to him,' whether or not the two events happened close in time." *Martin v. Fin. Asset Mgmt. Sys., Inc.,* 959 F.3d 1048, 1054 (11th Cir. 2020) (quoting *Brungart v. BellSouth Telecomms., Inc.,* 231 F.3d 791, 799 (11th Cir. 2000)). Also, intervening events can break a causal link between protected conduct and an adverse employment action. *See Henderson v. FedEx Express*, 442 F. App'x 502, 506 (11th Cir. 2011).

Alcindor has provided no evidence to show that Felix knew of his EEO activity prior to investigating his unauthorized break and ultimately terminating him. And Alcindor's vague reference to his EEO activity (Doc. 67-27 at 11) during the interview that led to his termination does not alone create an issue of fact. This is because temporal proximity is not evidence of causation if an employer, in taking the adverse action, merely proceeds along lines previously contemplated. *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 272 (2001) (per curiam). Alcindor proffers no evidence to show that his mention of EEO activity had any impact on Felix's decision. Moreover, Felix declared that he was unaware of Alcindor's prior EEO activity before the investigation, and that his decision to request removal was not based on any protected characteristic or activity. Doc. 67-27 ¶¶ 15–16.

Separately, Alcindor's unauthorized break was an intervening event that severs any causal link between his EEO complaints and his termination. As previously discussed, he was terminated after taking an extended break in violation of his LCA on October 28, 2018. Thus, Alcindor fails to establish a genuine issue of material fact as to whether he was terminated or subjected to differential treatment based on his EEO activities.

### B.    FMLA Retaliation

The Parties stipulate that Alcindor took 41 days of FMLA leave in 2018. Doc. 79 ¶ 4. Alcindor claims that, in retaliation for this leave, Defendant issued him the July 2018 NOR, the September 2018 LCA, and ultimately terminated his employment on November 3, 2018. *Id.* ¶¶ 35–37.

Defendant argues that there is no evidence Tramiel, Wray, or the individual who offered Alcindor the LCA had knowledge of his FMLA leave. Doc. 67 at 34. Defendant concedes that Tramiel and Wray learned of Alcindor's leave at some point in February 2018 but argues that the four-month gap in time between February and the July NOR is insufficient to show a close causal link. *Id.* Moreover, Defendant argues that any causal link between the leave and the July NOR or September LCA was broken by intervening events—Alcindor's arrest, abuse of FMLA leave, and June 5, 2018, suspension. *Id.* Defendant also argues that there were legitimate, non-retaliatory reasons for the NOR and LCA. *Id.*

In his response, Alcindor offers little more than a cursory claim that he submitted medical documentation related to his leave. Doc. 77 at 8. Defendant replies that the documents do not show that Wray and Tramiel knew of his FMLA condition. Doc. 80 at 2. Defendant further argues that the documents do not include details of Alcindor's medical condition, which he concedes. *Id.*

As discussed *supra,* Alcindor has knowingly and voluntarily waived his rights to bring any claims based on the July NOR or September LCA. *See* Doc. 67-25. Regardless, Alcindor's FMLA retaliation claims each fail on the merits too because Alcindor has not established a genuine issue of fact as to causation.

    a)    *The July NOR, September LCA, and Plaintiff's Termination.*

To establish a *prima facie* case of FMLA retaliation, a plaintiff must show that: (1) he engaged in protected FMLA activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Martin v.*

*Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1267–68 (11th Cir. 2008) (per curiam). Absent direct evidence of retaliation, the *McDonnell Douglas* framework applies. *Id.*

Plaintiff's retaliation claim based on his termination fails because he has not established an issue of fact as to the requisite causal connection between his use of leave and his termination. Neither Felix nor Crompton knew Plaintiff had taken FMLA leave at any time in 2018. Doc. 67-26 ¶ 14; Doc. 67-35 ¶ 4. Even if they had known, the four-month gap between his last FMLA leave day in May (Doc. 36 ¶ 34) and the decision to remove him in November would be insufficient to establish causation. *See Thomas*, 506 F.3d at 1364 (holding that even "[a] three-to-four month disparity between the statutorily protected expression and the adverse employment action is not enough"). Furthermore, there was a legitimate and non-discriminatory reason for Plaintiff's removal—he violated his LCA by leaving the work building without permission and taking an unauthorized break. Plaintiff has thus failed to establish a triable issue as to whether he was terminated in retaliation for his FMLA activity and the Court will grant summary judgment on this claim.

With regards to the July NOR and September LCA, Alcindor's claims have been waived. Additionally, he fails to establish an issue of fact as to causation. Separately, any causal link between Alcindor's leave and the NOR and LCA was broken by the intervening events of his June 5, 2018, suspension for improper conduct and failure to follow instructions, as well as his arrest and abuse of FMLA leave in July 2018.

Under the but-for standard, Alcindor must show that a reasonable jury could conclude that "the [employer's] reason was false and that discrimination was the real reason" for the challenged conduct. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993). Here, he has not done so. Instead, the overwhelming evidence suggests that the July NOR was issued for legitimate non-retaliatory and non-discriminatory reasons: namely, the FMLA leave abuse and arrest. Doc. 67-23; Doc. 67-5 ¶ 21. Furthermore, Alcindor conceded that the July NOR "was issued for just cause" when signing his LCA, so his claim that it was issued in retaliation for FMLA activity contradicts his own previous statements. Doc. 67-25 at 2. Plaintiff has also presented an unreliable version of the timeline, as he claimed in an EEO Complaint (under penalty of perjury) that he took leave on February 12, 2018 "due to [the] work related injury [he] sustained when [he] was involuntarily assigned to load on May 20, 2018." Doc. 67-31 at 3; Doc. 67-38 at 2.

Finally, even if Tramiel and Wray mistakenly determined that Alcindor abused his FMLA leave when they issued the July NOR, an employer who disciplines an employee under the mistaken but honest impression that the employee violated a work rule is not liable for retaliation. *See Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991) (citation omitted) ("If the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not [retaliatory] . . ."). Here, Tramiel and Wray honestly believed Plaintiff abused his FMLA leave and Plaintiff presents no evidence to the contrary. Doc. 67-5 ¶ 18; Doc. 67-36 ¶ 3. Thus,

Plaintiff has failed to establish a genuine issue of fact as to whether his FMLA activity was the but-for cause of the July NOR.

Nor has Alcindor established an issue of fact as to causation regarding the LCA. He was offered the LCA for a legitimate, non-discriminatory, and non-retaliatory reason—to afford him an opportunity to remain employed in lieu of termination. Doc. 67-2 at 114–117; *see* Doc. 67-25. Thus, each of Alcindor's FMLA retaliation claims fail on the merits.

## C.    Rehabilitation Act

Finally, Defendant argues that Alcindor fails to establish a triable issue of fact as to his RA claim, and more specifically: (1) whether he was disabled; (2) whether he was "otherwise qualified for the job"; and (3) whether Defendant had knowledge of Plaintiff's disability and could have discriminated against him based on it. Doc. 67 at 30–33. Furthermore, Defendant argues that non-discriminatory reasons existed for the July NOR, LCA, and the termination, and that Alcindor fails to show that a similarly-situated employee without a disability was treated more favorably than him. *Id.* at 33. Alcindor responds that whether he had a disability is in dispute, as is the issue of whether Defendant knew of his disability. Doc. 77 at 6–7. Defendant replies that Alcindor's use of FMLA and brief light duty do not establish that he was disabled under the RA, and there is no evidence that Wray, Tramiel, Felix, or Crompton (Alcindor's supervisors) received any documentation of his alleged disability. Doc. 80 at 2–3.

First, a federal employee bringing an RA claim must exhaust his administrative remedies by contacting the appropriate agency within 45 days of the alleged discriminatory act and providing it with information necessary to investigate and resolve the dispute. *Shiver*, 549 F.3d at 1344; *see also Mullins v. Crowell,* 228 F.3d 1305, 1310–11 (11th Cir. 2000) (applying the 45–day exhaustion requirement to federal employees raising claims under the Rehabilitation Act). Thus, for the same reasons that Alcindor's Title VII claims related to the July 2018 NOR and the September 2018 LCA were unexhausted, his corresponding RA claims are unexhausted too and thus barred.

That leaves only Alcindor's claim based on his termination. To establish a *prima facie* RA discrimination claim, a plaintiff must show that: (1) he was disabled at the time of the discrimination; (2) he was otherwise qualified for the position; and (3) he was discriminated against because of his disability. *Sutton v. Lader,* 185 F.3d 1203, 1207 (11th Cir. 1999). This can be proven with direct or circumstantial evidence. *Todd v. Fayette Cnty. Sch. Dist.,* 998 F.3d 1203, 1214 (11th Cir. 2021). "[D]irect evidence is evidence that 'if believed, proves the existence of fact without inference or presumption.'" *Id.* at 1215 (quoting *Fernandez v. Trees, Inc.,* 961 F.3d 1148, 1156 (11th Cir. 2020)). When a plaintiff offers only circumstantial evidence to prove a RA claim, courts apply the *McDonnell Douglas* framework. *See Ctr. v. Sec'y, Dep't of Homeland Sec., Customs & Border Prot. Agency,* 895 F.3d 1295, 1303 (11th Cir. 2018).

The analysis begins and ends with the issue of whether Alcindor has made a sufficient showing that he was discriminated against based on his disability. To

discriminate against Alcindor because of his disability, Defendant "must have been aware of the disability." *Cordoba v. Dillard's, Inc.,* No. 6:01-cv-1132-PCF-KRS, 2003 WL 21295143, at *8 (M.D. Fla. Feb. 24, 2003). Plaintiff stated in his deposition that he believed Tramiel, Wray, Felix, and Crompton were aware of his disability because he submitted PS Form 3971 slips and they knew he suffered from knee issues. Doc. 67-2 at 129–130, 137. However, assuming that his knee issues qualified as a disability, Wray, Tramiel, Felix, and Crompton each declared that they had no knowledge of his condition. Doc. 67-5 ¶ 21; Doc. 27 ¶ 15; Doc. 36 ¶ 5; Doc. 35 ¶ 6.

And although Alcindor asserted that each supervisor was aware of it in his deposition, such speculation does not create an issue of fact. *See Malone*, 858 F. App'x at 303 (holding that the plaintiff's affidavit asserting that the decisionmaker "must have known about his complaint" based on the EEO's policy of notifying supervisors of a pending action was mere speculation and was not sufficient to create an issue of fact as to the supervisor's knowledge); *see also Durr II*, 2022 WL 2315086, at *3 ("[The plaintiff's supervisor] could not have retaliated against [the plaintiff] based on his protected conduct if she was unaware of it, and his speculation is insufficient to create a genuine dispute of material fact.").

Furthermore, mere notice of Plaintiff's use or request for FMLA leave would be insufficient to impute knowledge of an alleged disability onto an employer. *McCormick v. Se. Pers. Leasing, Inc.*, No. 8:20-CV-1617-SDM-AAS, 2022 WL 481734, at *5 (M.D. Fla. Jan. 19, 2022) ("a bare request for 'FMLA paperwork' devoid of description about the basis for the request cannot charge the decision maker with

knowledge that the employee suffers from a disability."). Vague descriptions of medical conditions are also insufficient to show that an employer was aware of an employee's disability. *Morisky v. Broward Cnty.,* 80 F.3d 445, 448 (11th Cir. 1996) (explaining that "vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of" a disability). Thus, Alcindor has failed to establish a genuine issue of material fact as to whether his supervisors knew of his disability, and, therefore, whether he was terminated based on it.

As a separate ground for summary judgment, Plaintiff fails to produce evidence of a similarly-situated employee without a disability who was treated more favorably than him. Alcindor conceded during his deposition that Wray is a disabled veteran and that he has no personal knowledge as to whether Frizzell, Darrigo, or Renda were disabled. Doc. 67-2 at 142–148. Thus, Alcindor fails to make out a *prima facie* case of discrimination under the RA and summary judgment is due to be granted for Defendant.

## IV.   CONCLUSION

Alcindor fails to establish a *prima facie* case of Title VII discrimination or retaliation, and summary judgment is due to be granted in favor of Defendant. Likewise, he fails to establish any genuine issues of material fact as to his RA and FMLA claims, and summary judgment is due to be granted in favor of Defendant on these claims as well. Therefore, the Court will grant summary judgment in favor of Defendant on all counts. Accordingly, it is

**ORDERED AND ADJUDGED**:

1.      Defendant's Motion for Summary Judgment (Doc. 67) is **GRANTED**.

2.      The Clerk is directed to enter Judgment in favor of Defendant Louis Dejoy, and against Plaintiff, Terry Alcindor.

3.      The Clerk is further directed to terminate any pending motions and deadlines and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida on August 31, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties